IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROSE HOOK, On Behalf of Herself and All Others Similarly Situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>ACME NASHVILLE, LLC d/b/a ACME FEED & SEED,<br><br>    *Defendant*. | COLLECTIVE ACTION<br><br>CASE NO. 3:23-cv-00108<br><br>JUDGE RICHARDSON<br><br>MAGISTRATE JUDGE HOLMES<br><br>JURY DEMAND |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO APPROVE SETTLEMENT AND DISMISS ACTION WITH PREJUDICE

Named Plaintiff Rose Hook and all Opt-In Plaintiffs ("Plaintiffs"), through undersigned counsel,[1] Barrett Johnston Martin & Garrison, PLLC, submit this Memorandum in Support of their Unopposed Motion to Approve Settlement and Dismiss Action with Prejudice. The Parties' Settlement Agreement (the "Settlement" or "Agreement") is fair, adequate, and reasonable. The Court should therefore approve it.

### I. BACKGROUND

**A. Plaintiffs' Claims and the FLSA Notice Process**

On February 6, 2023, Named Plaintiff Rose Hook filed this action against Defendant Acme Nashville LLC ("Defendant") to challenge Defendant's reliance on the "tip-credit" provision of Section 3(m) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(m), to pay servers and bartenders at its restaurant and bar in Nashville. (Doc. No. 1). Plaintiffs allege that Defendant violated the tip-credit provision by: (1) failing to provide them with the required notice before

---

[1] The Declaration of Joshua A. Frank has been submitted contemporaneously herewith. This Declaration is cited herein as "Frank Decl. at ¶ __". The Settlement Agreement is cited herein as "SA at ¶ __".

taking the tip credit; (2) requiring them to share tips with non-tipped employees who have no or insufficient customer interaction; and (3) requiring them to perform large amounts of non-tip-producing duties paid at a tipped hourly rate of less than the $7.25 per hour minimum wage, including during periods of time when they were not serving customers. *See* Compl. ¶ 2 (Doc. No. 1).

The parties reached an agreement regarding first-stage FLSA notice to potential Plaintiffs (Doc. No. 17), which the Court approved on April 19, 2023 (Doc. No. 20). On May 1, 2023, FLSA notice was issued in accordance with the Court's April 19, 2023 Order. (Doc. No. 25). Ultimately, 28 individuals, including Named Plaintiff, filed their signed, written consent to become Party Plaintiffs, in accordance with Section 16(b) of the FLSA, 29 U.S.C. § 216(b) (collectively, "Plaintiffs").

### B. Named Plaintiff and the Plaintiffs are Similarly Situated.

The parties stipulate for purposes of settlement only that the Plaintiffs and Named Plaintiff are similarly situated. They all worked as servers and/or bartenders paid a sub-$7.25 hourly rate at a single restaurant. *See* Compl. ¶ 2 (Doc. No. 1); Order Authorizing Notice at 1 (Doc. No. 20). In short, because they worked in similar positions at a single location and were subject to the same challenged pay policies as the Named Plaintiff, they are similarly situated such that they are properly joined within the meaning of *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023).

### C. The Settlement and its Terms

Following the close of the notice period, the parties exchanged information and documents, in particular the payroll and timekeeping data, to facilitate settlement negotiations. On August 31, 2023, the parties attended an all-day, in-person mediation with Michael L. Russell, who is an experienced mediator and has substantial expertise in wage-and-hour class and collective action

2

litigation. Frank Decl. at ¶ 5. The result of that mediation was a term sheet reflecting the material terms of the parties' negotiated resolution. *Id.* In the weeks that followed mediation, the parties engaged in continued arm's-length negotiations as they crafted the now fully-executed Agreement before the Court. *Id.* The Agreement reflects the outcome of the parties' extensive negotiations and contains the following salient monetary and non-monetary provisions:

- Defendant will pay $75,000 allocated as:
    - $48,000 to the Plaintiffs (half as wages and half as liquidated damages), SA at ¶¶ 24, 27 and Ex. A;
    - $2,000 as a service payment to the Named Plaintiff, SA at ¶ 23; and
    - $25,000 as payment for Plaintiffs' attorneys' fees and costs, SA at ¶ 22;
- Plaintiffs release the wage-and-hour claims related to the facts of this case, SA at ¶ 33; and,
- Named Plaintiff agrees to additional provisions, including a general release and other similar non-monetary provisions, as additional consideration for the service payment, SA at ¶ 34.

The allocation of settlement funds was performed by Plaintiffs' counsel based on the pay and time records produced by Defendant. Frank Decl. at ¶ 6. Plaintiffs' tip-credit damages were calculated based on the difference between the applicable minimum wage and the sub-$7.25 per hour tipped hourly rate for each hour worked at the lower rate. *Id.* These damages, which again assumed Defendant was not entitled to take the tip credit on any of the hours worked by the Plaintiffs, totaled $81,662.26. *Id.* In other words, the $48,000 to be paid to the Plaintiffs under the Settlement represents more than half of the maximum amount of unpaid wages this lawsuit sought. *Id.* The $48,000 to be distributed to Plaintiffs was calculated *pro rata* based on these damages calculations. *Id.*

### D. The Risks of Continued Litigation and Benefits of the Settlement

As in any FLSA litigation, Defendant was likely to vigorously assert several affirmative

3

Case 3:23-cv-00108    Document 49    Filed 11/03/23    Page 3 of 11 PageID #: 212

defenses to limit or altogether defeat Plaintiffs' recoveries. For example, had this litigation continued, Defendant would likely have argued that it provided the required notice of taking the tip credit, that it did not require impermissible tip-sharing with non-tipped employees, and that it properly paid employees for their non-tip-producing work activities. Even if Defendant were unsuccessful in avoiding liability altogether, Defendant was likely to argue that tip credit damages should not be awarded for every hour worked because, among other things, any non-tip-producing work was limited in nature and any improper tip-sharing was infrequent. In other words, Defendant would dispute the number of improperly compensated work hours. Similarly, Defendant would have argued that it acted in good faith and with a reasonable belief that its acts complied with the FLSA, such that no liquidated damages should be awarded. And, Defendant may have challenged the "similarly situated" determination at the second stage, following the close of discovery. The Settlement provides substantial payment to Plaintiffs and avoids the risk of a reduced recovery or no recovery after months or years of continued litigation. For Defendant, the Settlement similarly provides certainty and avoids additional litigation costs and the risk of a judgment in Plaintiffs' favor.

## II. ARGUMENT

The Settlement is fair and reasonable and should be approved. Courts review settlements under the FLSA to ensure that they are fair and reasonable. *Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1028 (W.D. Tenn. 2016); *Nutting v. Unilever Mfg. (U.S.) Inc.*, No. 2:14-CV-02239-JPM, 2014 WL 2959481, at *3 (W.D. Tenn. June 13, 2014); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Rampersad v. Certified Installation LLC*, No. 1:12-cv-00032, 2012 WL 5906878, at *1 (E.D. Tenn. Nov. 26, 2012). The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *Massiah v. Metroplus*

4

*Health Plan, Inc.*, No. 11-cv-5669, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012); *Trauth v. Spearmint Rhino Cos. Worldwide*, No. 09-cv-1316, 2012 WL 4755682, at *5 (C.D. Cal. Oct. 5, 2012); *cf. O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (standards for certification of an FLSA collective action are less stringent than under Rule 23). This is because, unlike in a Rule 23 class action, there are no absent class members in a 216(b) collective action. Rather, in a 216(b) collective action like this one, each Opt-In Plaintiff has affirmatively consented to join the case as a plaintiff and agreed to be bound by any judgment or settlement reached by the Named Plaintiffs and their counsel. An FLSA settlement need only reflect a reasonable compromise of contested litigation involving a *bona fide* dispute between the parties. *Crawford v. Lexington- Fayette Urban Cty. Gov't*, No. Civ. A. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) (citations omitted); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-cv-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Rampersad*, 2012 WL 5906878, at *1; *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012).

**A. The Settlement represents a fair and reasonable compromise of Plaintiffs' claims.**

The settlement is fair and reasonable because it provides the Plaintiffs' substantial value given the number of disputed issues and risks in the case. As already noted, the Settlement provides each Plaintiff with *more than half* of the unpaid wages they could possibly recover at trial. This is an excellent result given the likely delay and uncertainty of any recovery. Specifically, as noted above, Defendant was likely to assert a number of defenses and make a number of arguments that could limit or altogether prevent Plaintiffs from receiving any recovery. Moreover, the Settlement is the result of arm's-length negotiations during an all-day mediation before an experienced mediator with substantial expertise in this area, followed by substantial negotiations over the final written Agreement as well. In light of the considerable risk, cost, and uncertainty of continued

litigation, the Settlement is fair and reasonable and should be approved.

> **B. The modest service payment to Named Plaintiff Rose Hook is reasonable and should be approved.**

"Courts routinely recognize and approve incentive awards for class representatives and deponents" for the services they provided and the risks they incurred during the course of the class action litigation. *See, e.g., Wineland, et al. v. Casey's General Stores, et. al.,* 267 F.R.D. 669, 677 (S.D. Iowa 2009); *Nelson, et al., v. York County,* 382 F. Supp. 2d 206, 226 (D.C. Maine 2005) (seventeen class members who were deposed received incentive payments to recognize the time and effort they expended in preparing for and attending the deposition); *Huguley v. Gen. Motors Corp.,* 128 F.R.D. 81, 85 (E.D. Mich. 1989) (approving enhancement award of $322,496.00 to eighty-eight anecdotal witnesses and named plaintiffs because the "named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation they have borne").

Here, the proposed service payment to Named Plaintiff Hook of $2,000 is reasonable, in light of service payments approved by courts in similar FLSA collective action settlements, which are often considerably larger. *See Wineland, et al. v. Casey's General Stores, et. al.,* 267 F.R.D. 669, 677 (S.D. Iowa 2009) (awarding $10,000.00 service award to representative plaintiff in FLSA suit); *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (approving service payment of $12,500 to the named plaintiff); *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880, at *5 (S.D. Ohio, May 24, 2013) (approving a $12,500 enhancement award to the named plaintiff from a $452,380 settlement); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, at *8 (S.D. Ohio, Nov. 25, 2019) (approving a service award of $10,000); *Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, at *17 (S.D. Ohio Oct. 17, 2018) (approving $10,000 service award because "Plaintiff contributed his efforts to the lawsuit and only

6

through Plaintiff's efforts did a large group of low-wage workers receive a substantial award" that "furthered the important public policies underlying the" FLSA); *Salinas v. U.S. Xpress Enters., Inc.*, 2018 U.S. Dist. LEXIS 50800, at *26 (E.D. Tenn. Mar. 8, 2018) (approving a service award of $10,000); *Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, 2016 U.S. Dist. LEXIS 128819, at *7 (S.D. Ohio Sept. 21, 2016) (approving two service awards of $25,000); *Davidson v. Henkel Corp.*, 2015 U.S. Dist. LEXIS 195088, at *3 (E.D. Mich. Dec. 8, 2015) (approving $15,000 service award for the named plaintiff).

This proposed service payment reflects appropriate compensation for the services and sacrifices by Ms. Hook. Frank Decl. at ¶ 11. Ms. Hook initiated this lawsuit and led the organization and outreach to potential Plaintiffs from its inception. *Id.* She also spent hours on this case, assisting counsel in their investigation and litigation strategy and participated in the day-long mediation with Mr. Russell, and was involved in the negotiation of the written Settlement that was ultimately reached. *Id.* And, Ms. Hook has provided additional consideration in the form of a general release and agreement to other non-monetary provisions (for example, mutual non-disparagement, agreement not to work for Defendant at its three restaurants, and agreement not to encourage other employees to file claims against Defendant). *Id.*; SA at ¶ 34. In short, Ms. Hook's extensive efforts to bring this action and assist Plaintiffs' counsel in reaching a settlement that provides a substantial recovery to all Plaintiffs, as well as this additional consideration, justifies payment of the modest service award Defendant has agreed to pay. Frank Decl. at ¶ 11.

### C. The agreed-upon payment for attorneys' fees and costs is reasonable and should be approved.

The payment of $25,000 for attorneys' fees and costs represents a reduction of Plaintiffs' counsel's incurred fees and expenses. Frank Decl. at ¶ 7. Namely, it is approximately 74% of the

more than $33,600 in attorneys' fees and costs incurred to date. *Id.* ¶¶ 7-8. This payment is therefore reasonable and should be approved.

The FLSA's fee-shifting provision provides that a prevailing plaintiff shall recover reasonable attorneys' fees and litigation costs. 29 U.S.C. § 216(b). "Indeed, an 'award of attorneys' fees under the FLSA is mandatory . . . .'" *Thompson v. United Stone, LLC*, No. 1:14-cv-224, 2015 WL 867988, at *2 (E.D. Tenn. Mar. 2, 2015) (citations omitted). "[T]he purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir.1984)). The starting point in calculating a "reasonable" attorney fee is typically the determination of the fee applicant's "lodestar," which is the number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Here, Plaintiff's counsel's actual fees through the date of this filing, based on the number of hours expended multiplied by the attorneys' regularly hourly billing rates is more than $33,000. Frank Decl. at ¶¶ 8-9. This is based on more than 109 hours billed by Plaintiffs' attorneys and professional staff at hours approved by this Court for this type of litigation. *Id.* ¶¶ 8-10. Plaintiff has also incurred expenses totaling $653.39 as of the date of this filing. *Id.* ¶ 8. In total, Plaintiffs have incurred a total of more than $33,650 in fees and expenses in this matter. *Id.* Accordingly, the proposed payment of $25,000 for attorneys' fees and costs would therefore "not produce [a] windfall[]" to Plaintiff's counsel and confirms its reasonableness. *Blum v. Stenson*, 465 U.S. 886,

897 (1984) (citations omitted). In fact, it represents a compromise of the fees that Plaintiffs could have expected to recover had this litigation proceeded through trial.

Plaintiffs' counsel's fees are based on hourly rates that are reasonable. Whether an hourly rate is reasonable should be considered in the context of "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Monroe v. FTS USA, LLC*, No. 2:08-cv-2100, 2014 WL 4472720 at *9 (W.D. Tenn. July 28, 2014) (noting, in the FLSA context, that an attorney's reasonable hourly rate should begin with an assessment of the "prevailing market rate"). The hourly rates billed by each of the attorneys who worked on this case and for whom compensation is sought are reflected in the declaration of undersigned counsel. Frank Decl. at ¶ 9. The hourly rates, upon which Plaintiffs' counsel's lodestar is based, are reasonable. *Id.* ¶ 10. Indeed, the hourly rate structure used by Barrett Johnston Martin & Garrison, PLLC has been approved by this Court in this very type of litigation. *Id.*

As the Supreme Court has held, "there is a 'strong presumption' that the lodestar figure is reasonable[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987) ("A strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute . . . ."); *McCutcheon*, 2013 WL 4521016, at *1 (citation omitted) ("[T]here is "a 'strong presumption' that the lodestar 'represents a reasonable fee.'"); *Mathis v. Wayne Cty. Bd. of Educ.*, No. 1:09-cv-0034, 2011 WL 3320966, at *8 (M.D. Tenn. Aug. 2, 2011) (Trauger, J), *aff'd*, 496 F. App'x 513 (6th Cir. 2012) ("If the requested fee is essentially in line with the 'lodestar,' then there is a strong presumption that the requested fee is reasonable and recoverable.") (footnote omitted). This presumption applies with even more force where, as here, the fee payment represents a substantial reduction of the lodestar.

9

In sum, the agreed-upon payment of attorneys' fees and expenses is fair and reasonable and should be approved.

### III. CONCLUSION

For the reasons stated above, Plaintiffs submit that the Court should approve all aspects of the Settlement as fair and reasonable, and enter the proposed order attached to their Motion approving the settlement and dismissing this case with prejudice.

Dated: November 3, 2023

Respectfully submitted,

/s/ Joshua A. Frank
**JOSHUA A. FRANK (No. 33294)**
**NICOLE A. CHANIN (No. 40239)**
BARRETT JOHNSTON MARTIN & GARRISON, PLLC
200 31st Avenue North
Nashville, TN 37203
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com
nchanin@barrettjohnston.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of *Memorandum in Support of Plaintiffs' Unopposed Motion to Approve Settlement and Dismiss Action with Prejudice* was filed electronically with the Clerk's office by using the CM/ECF system and served on the following counsel for Defendant as listed below on November 3, 2023.

       **COURTNEY LEYES (No. 34012)**
FISHER & PHILLIPS LLP
424 Church St Ste 1700
Nashville, TN 37219
Telephone: (615) 488-2900
Facsimile: (615) 488-2928
cleyes@fisherphillips.com

*Attorney for Defendant*

                                                  /s/ Joshua A. Frank
                                                  JOSHUA A. FRANK
                                                  **BARRETT JOHNSTON**
                                                        **MARTIN & GARRISON, LLC**